530 A.2d 972

Thomas A. Books, Appellant *v.* Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, Appellee.

Submitted on briefs April 20, 1987, to Judges CRAIG and PALLADINO, and Senior Judge BLATT, sitting as a panel of three.

*Joseph A. Klein,* for appellant.

*Steven P. Miner,* Assistant Counsel, with him, *Spencer A. Manthorpe,* Chief Counsel, and *Henry G. Barr,* General Counsel, for appellee.

OPINION BY JUDGE PALLADINO, August 27, 1987:

This is an appeal by Thomas A. Books from a decision of the Court of Common Pleas of Dauphin County (trial court) affirming the suspension of his driver's license by the Pennsylvania Department of Transportation, Bureau of Driver Licensing (DOT) pursuant to Section 1547 of the Vehicle Code.[1] For the reasons which follow, we affirm.

A police officer observed Books driving with his left tires over the double yellow line and, subsequently, with more than half of his vehicle over the double yellow line. After the officer stopped the vehicle and approached it, he detected the smell of alcohol on Books' breath. Thereafter, the officer administered four field sobriety tests,[2] all of which Books failed.

The officer placed Books under arrest for driving under the influence of alcohol, 75 Pa. C. S. §3731, and warned him of the consequences of his failure to submit

---

[1] 75 Pa. C. S. §1547. This section provides an automatic one year suspension for anyone who is placed under arrest for driving under the influence of alcohol or a controlled substance, 75 Pa. C. S. §3731, and refuses to submit to one or more chemical tests of blood, breath or urine.

[2] The officer administered the nystagmus gauge test, the hand-to-toe test, the one-leg stand and the finger-to-nose test.

to a chemical test of blood, breath or urine. He agreed to take a breathalyzer and was transported to Troop H State Police Barracks. However, when that test was administered, Books puffed into the machine, refusing to give a full breath. After four attempts, the operator considered it a refusal. Books did not offer any medical reason why he could not provide an adequate breath sample.

The arresting officer decided to give Books another chance. He transported him to a local hospital and offered him a blood test. Books refused the test, without excuse or reason.[3]

Thereafter, DOT suspended Books' operating privileges for one year. On appeal, the trial court affirmed. Books now appeals to this court raising three issues for our consideration.[4] First, Books asserts that the arresting officer did not have reasonable grounds to believe that Books was operating his vehicle under the influence of alcohol. Second, whether Books' failure to supply sufficient breath to activate the breathalyzer machine constitutes a refusal of the test. Third, Books contends that he did not receive a warning that his failure to submit to a blood test would cause his license to be suspended. We will treat each issue in order.

Appellant asserts that reasonable grounds are to be equated with the probable cause necessary to effect an

_____

[3] Books now asserts that he refused the blood test because of his fear of syringes and Acquired Immune Deficiency Syndrome (AIDS), although he admits that he did not state either reason at the time of his refusal.

[4] Our scope of review of a Common Pleas Court's decision in a motor vehicle license suspension case is limited to a determination of whether the findings of fact are supported by competent evidence, errors of law have been committed or the Court's decision demonstrates a manifest abuse of discretion. *Waldspurger v. Commonwealth*, 103 Pa. Commonwealth Ct. 148, 520 A.2d 83 (1987).

arrest. This is clearly not so. Reasonable grounds exist when a person in the police officer's shoes viewing these facts could conclude that Books was operating a vehicle under the influence of alcohol. *Waldspurger v. Commonwealth*, 103 Pa. Commonwealth Ct. 148, 520 A.2d 83 (1987).

In the case at bar, the arresting officer observed Books' erratic driving, smelled alcohol, and observed him fail four field sobriety tests. The officer's observations constitute reasonable grounds to require Books to submit to the test.

Books next contends that there is not sufficient evidence that he refused a breath test by failing to supply sufficient breath. In particular, he asserts that the Commonwealth did not substantiate that the required accuracy inspection and calibrations had been performed nor was it proven that the breathalyzer was one approved by DOT under the Vehicle Code.

Our review of the record leads us to conclude that the trial court's finding of refusal to submit to the test is supported by substantial evidence. Both the arresting officer and the breathalyzer administrator testified that Books did not provide sufficient breath and that he stopped blowing as soon as he saw the machine register. "It is well established law that where a defendant, when taking a breathalyzer test, does not exert a total conscious effort, and thereby fails to supply a sufficient breath sample, such is tantamount to a refusal to take the test, thus warranting the suspension of his motor vehicle operator's license." *Budd Appeal*, 65 Pa. Commonwealth Ct. 314, 318, 442 A.2d 404, 406 (1982). Once a refusal has been established, we need not concern ourselves with the operability or suitability of the machine. *Id.* at 319, 442 A.2d at 406-407.

Finally, Books asserts that he did not recieve a warning that his failure to submit to the blood test would result in the suspension of his license, and that

the refusal was reasonable because of his fear of needles and AIDS. This argument is irrelevant. While the statute states that a driver consents to "one or more chemical tests of breath, blood or urine," the officer need only offer one such test. Once Books refused the breathalyzer, DOT could suspend his license. 75 Pa. C. S. §1547.

Accordingly, we affirm.

## ORDER

AND NOW, August 27, 1987, the order of the Court of Common Pleas of Dauphin County in the above-captioned matter is affirmed.

---

CONCURRING OPINION BY JUDGE BLATT:

While I agree with the majority's conclusion in this case, I believe that, under the circumstances, our opinion should address the issue of whether or not the appellant refused to take the blood test.

Police officers, of course, are not required to spend time either cajoling an arrestee or waiting for him to change his mind regarding his refusal to take a chemical test, pursuant to Section 1547(a) of the Vehicle Code, 75 Pa. C. S. §1547(a). *Department of Transportation, Bureau of Traffic Safety v. Ferrara,* 89 Pa. Commonwealth Ct. 549, 493 A.2d 154 (1985). And, a refusal to take a breathalyzer test is not vitiated by a subsequent consent and request by an arrestee to take the test. *Department of Transportation, Bureau of Traffic Safety v. Wroblewski,* 65 Pa. Commonwealth Ct. 333, 442 A.2d 407 (1982).

Where, however, as in the case *sub judice,* a police officer gratuitously offers an individual a subsequent opportunity to take one of the chemical tests enumerated in Section 1547(a) after a prior refusal, the prior refusal is waived. *See Department of Transportation, Bureau*

*of Traffic Safety v. Krishak,* 91 Pa. Commonwealth Ct. 307, 496 A.2d 1356 (1985); *see also Ferrara.* I believe, therefore, that we should examine the circumstances surrounding the subsequent offer to determine whether or not there was a second refusal.

In *Ferrara,* we stated that "[a]lthough the police officer involved was under no duty to allow Appellee to consult with anyone, by telling her that she could call someone, he *put* himself under a duty to either allow her to do so or inform her that he had changed his mind." *Id.* at 555-56, 493 A.2d at 157 (emphasis in original). The same rationale is applicable here. Furthermore, where a police officer has made more than one request of an arrestee to take a chemical test, we have previously considered the circumstances surrounding the *last* request. *See Bonise v. Department of Transportation,* 102 Pa. Commonwealth Ct. 6, 517 A.2d 219 (1986); *see also Department of Transportation, Bureau of Driver Licensing v. Siegert,* 98 Pa. Commonwealth Ct. 337, 511 A.2d 268 (1986). Under the majority's approach, here, however, it would be possible for an arrestee, who initially refused a chemical test, to lose his or her license, even though a subsequent test taken pursuant to a second offer by the police had revealed an absence of alcohol.

I believe, therefore, that our opinion should consider whether or not the appellant received a warning that a failure to submit to the blood test would result in a suspension of his license and whether or not his refusal was reasonable because of his fear of needles and AIDS.

I would note, of course, that the arresting police officer testified here that he did in fact warn the appellant of the consequences of his refusal to take the blood test but that the trial court did not reach that issue. The trial court, however, did properly conclude that the warning given prior to the breathalyzer test, pursuant

to Section 1547(a), encompassed *"one or more* chemical tests of breath, blood or urine" (emphasis added) so that no separate warning was required prior to the police officer's gratuitous offer of a blood test. Furthermore, the appellant testified that, in refusing the blood test, he expressed neither his fear of needles nor of AIDS to the police. And, in *Department of Transportation, Bureau of Traffic Safety v. Bartle,* 93 Pa. Commonwealth Ct. 132, 500 A.2d 525 (1985), we held that a refusal of a blood test due to a fear of needles nonetheless constituted a refusal. I believe, therefore, that the initial warning was sufficient to encompass both the breathalyzer and the blood test request, that the appellant refused both requests, and that, therefore, the order of the trial court suspending his license has properly been affirmed.